## DECEMBER TERM, 1843.

CLAUDIUS GIBSON'S HEIRS *v.* STERLING NIBLETT, *et al.*

G. G. bought slaves of N., which were introduced into this State, and sold in violation of law; and, to secure the purchase-money, executed a deed of trust on land; and afterwards sold the land to C. G., which was again sold under the deed of trust to N., at which sale also C. G. became the purchaser, and executed his notes to N., for the purchase-money, and gave a deed of trust to secure their payment; N. attempted to sell under the deed of trust, and was enjoined by C. G., on the ground that this debt to N. was the assumption by him of the debt of G. G.; *held*, that the illegality of the consideration of the notes of G. G., did not attach to the notes given by C. G., and that N. was entitled to sell under the deed of trust.

Where notes are given, and a deed of trust executed to secure their payment, it is no ground for enjoining a sale under the deed of trust, that a suit at law is pending, upon the notes, in which their validity is questioned.

THIS case was submitted upon demurrer to the bill.

The bill was filed by the heirs of Claudius Gibson, to enjoin the sale of certain land by the trustee, who is made party. The facts disclosed by the bill and exhibits are :—

That Gibeon Gibson, in 1836, purchased from defendant, Niblett, a "large lot" of slaves, the purchase-money of which was all paid but about the sum of fifteen thousand dollars. That Gibeon Gibson, to secure the payment, gave his note, and with one Nathaniel Wilson, a deed of trust, to W. F. Markham and R. Featherston, on 40 slaves, and a tract of land. That afterwards, in 1838, Gibeon Gibson sold and conveyed the land and slaves to Claudius Gibson, which were conveyed in the deed of trust from Wilson and Gibson to W. F. Markham and R. Featherston, as trustees for Niblett's benefit.

That the complainants verily believed that the slaves were introduced for sale, &c., and that, though Niblett pretended he brought them here for his own use, the pretence made at the time of the introduction (in 1836) was to cover the illegal introduction. That, afterwards, a sale was made by Markham and Featherston, trustees, and at that sale, Claudius, Gibson became the purchaser, and gave his own note for the purchase-money, and a deed of trust on the same land to secure the amount. A sale being attempted

under this last deed of trust, the present bill was filed to enjoin it. The deed of trust from Gibson and Wilson, is made an exhibit to the bill, which disclosed, that G. Gibson's debt to Niblett was some *ten* thousand dollars, borrowed money, and a note of about sixteen thousand dollars, made by Wilson, and indorsed by Gibson, after several others. The same deed shows, that there was land sold by Niblett to Gibson. The deed of trust, the execution of which was enjoined, disclosed the amount of Gibson's debt to Niblett, and the nature of the consideration.

*A. Barwell*, for the demurrer.

Apart from the argument which might very properly be made upon the insufficient averments of this bill, the question presented is one which has heretofore received a very careful and learned investigation by your Honor, in the case of *J. M. Pease* v. *Ballard, Franklin, & Co., and others.* To that case, the profession ought to be contented to refer, and I am willing to submit the question on the present demurrer, on the sound reason of that decision. I would merely suggest, that the present is a much stronger case than the one referred to. The original note, deed of trust, and debtor, are entirely out of the present question. Gibson and Wilson, are, in relation to this case, and in every point of view, to be reckoned among the things that were. Can C. Gibson defraud Niblett by giving his note secured by deed of trust, instead of money, and then go through his own contract with Gibeon Gibson, and Gibeon Gibson's contract with his partner Wilson, to avail himself of an alleged illegality in the contract between Niblett, and Gibson and Wilson. I ask your Honor's attention to the facts disclosed by the bill and exhibits, and respectfully refer to the case above cited, and the authorities there cited.

*George S. Yerger*, for complainants.

The bill in this case is demurred to. The bill prays an injunction to a sale of land and slaves under a deed of trust, made to secure notes alleged to have been made and given for slaves, illegally imported into the State for sale. The land and slaves were subsequently sold, and complainants claim under this purchase.

1st. There are two points in this case. The first point cannot be distinguished from the decision of Chancellor Buckner, in the case of *Pease* v. *Ballard, Franklin, & Co.* This point, therefore, I give up in this Court.

2. But the bill alleges, that suit has been brought on said illegal notes in the Federal Court, that they are there defended on the ground of illegality ; that if the property in the deed of trust is sold now, whilst said suit is pending, no one will buy the property ; that it will inevitably be sacrificed, under the trustees' sale, &c. These facts are all admitted by the demurrer. According to the decision of the court of appeals of Virginia, in *Gilmer's Rep.*, in such a case the court will hold up the injunction until the suit at law is decided.

This case is not only just, but is, in my opinion, sound law. A court of equity ought not, and will not, permit a man to so use a legal advantage, as to sacrifice, under a state of things such as is herein admitted, the rights of another. On this ground alone, in this Court, the injunction ought to be kept up, until the case at law is decided.

By the CHANCELLOR. The complainants file this bill as the heirs of Claudius Gibson, deceased, to enjoin a sale about to be made under a deed of trust, made by said Claudius, in his lifetime, by which the land was conveyed, in trust, to Richard Featherston, for the purpose of securing a debt, due from said Claudius to the defendant, Niblett. They show that the land was first purchased by Claudius Gibson, from Gibeon Gibson. That, before the sale to Claudius, Gibeon had made a deed of trust upon it, to secure a debt due from him to Niblett. The land was sold under this latter deed, and Claudius again became the purchaser, and, to secure the purchase-money, reconveyed the same land, by the deed of trust, which they now seek to set aside, upon the allegation that this latter sale, and deed of trust, were the result of an agreement by which Claudius Gibson was to become responsible to Niblett, for the debt due him from Gibeon Gibson ; and that the debt of Gibeon was based upon an illegal sale of slaves to him by Niblett. It is shown that the notes of Claudius Gibson, which the deed of

trust was given to secure, are in suit in the United States Circuit Court, and are there defended, upon the ground that they were a mere renewal of Gibeon Gibson's notes, which were based upon an illegal consideration. The case was submitted upon a general demurrer to the bill. The leading question raised by this bill was very fully examined by me, in the case of *Pease* v. *Ballard, Franklin, & Co.*, and I refer to that case for an exposition of my views, as applicable to this. Here the consideration which supports the notes and deed of trust, made by Claudius Gibson, is the land purchased by him, under the deed of trust made by Gibeon Gibson. The alleged illegality of the consideration of the latter cannot affect the consideration of the former. I think this point is too plain for argument. I see nothing in the suggestion of the pendency of a suit upon the notes, which should induce me to stay a sale under the deed of trust, until that suit is decided. The creditor is entitled to pursue, both his remedies on the notes, and upon the deed of trust, until by one or the other he obtains a satisfaction of his claim ; and the satisfaction of the one will necessarily extinguish the other. Let the demurrer be sustained, and the bill dismissed, at the costs of the complainants.